# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALONSO CAMPBELL, | |
| Petitioner, | Case No. 16-cv-01874 |
| v. | Judge John Robert Blakey |
| JEFFREY KORTE, | |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

Petitioner Alonso Campbell brings a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his convictions entered in the Circuit Court of Cook County. Petitioner is serving a 28-year sentence for the first-degree murder of Terrance Smith. For the following reasons, this Court denies the Petition, and declines to issues a certificate of appealability.

## I. Legal Standard

Federal review of state-court decisions under § 2254 is limited. With respect to a state court's determination of an issue on the merits, habeas relief can be granted only if the decision "was contrary to, or involved an unreasonable application of, clearly established federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011). This Court presumes that the state court's account of the facts is correct,

and Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012).

State prisoners must also give state courts "one full opportunity" to resolve any constitutional issues by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a petitioner asserts a claim for habeas relief that he did not present in the first instance to the state courts, then the claim is procedurally defaulted. *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010) (federal courts may not address those claims unless the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice if the claims are ignored).

## II. Background and Procedural History

The facts and procedural posture from the state court are summarized below. This Court presumes the correctness of the state court's factual determinations for the purposes of habeas review, 28 U.S.C. § 2254(e)(1), because Petitioner has failed to contest them or otherwise point to any clear and convincing contrary evidence.

### A. Pre-Trial Proceedings

On May 25, 2007, Petitioner murdered Terrance Smith in a drive-by shooting as the victim sat in a sedan with an individual named Alvin Lane. [12-1] at 36–37. Two days later, Assistant State's Attorney (ASA) Emily Stevens and Detective Thomas Crain visited Alvin Lane in the hospital, and he said that he saw either a

gun in the backseat of the SUV or the Petitioner holding a gun, and that he also recalled gunfire coming from the front seat of the SUV. *Id.*

Subsequently, the State charged Petitioner along with Shantrell Tucker, and Antonio Cox, with the first-degree murder of Smith. *Id.* at 3. In January 2008, the trial court set Petitioner and Tucker for trial on April 1, 2008. *Id.* at 4.

In February and March 2008, the trial court held several status hearings regarding the prosecution's difficulty in serving certain witnesses. *Id.* at 4. On March 24, the trial court set another status date for April 1, 2008—the day on which trial had set to begin—because Petitioner's counsel failed to appear. *Id.* When the parties met on April 1, the prosecution advised the trial court that they were still not prepared for trial due to difficulty in procuring witnesses, and Tucker's counsel demanded trial. *Id.* Two weeks later, Petitioner's counsel also demanded a trial.

In June 2008, the court granted the prosecution's motion for an extension of time under the Illinois Speedy Trial Act to locate a witness, Lukenia Strong. *Id.* at 5. Several days later, counsel for both defendants stipulated that the prosecution exercised due diligence in attempting to find Strong, but they also objected to the continuance because they saw no reasonable likelihood that the State could ever procure her appearance. *Id.* at 5–6.

**B. Trial**

The joint trial (Petitioner and Cox) commenced on August 7, 2007. *Id.* at 6. At trial, Jennifer Walls testified that on the evening of Smith's murder, she and Steve

3

Wooten were outside speaking to three men in a red Monte Carlo (Lane, Smith, and Jennifer's brother, Vernon Walls) when an SUV pulled up next to the Monte Carlo, and Jennifer took a phone call. *Id.* at 6-7. When that phone call ended, Jennifer heard gunshots coming from the SUV and saw that Smith and Lane had been shot. *Id.* Consistent with her statements to detectives the day after the shooting, Jennifer identified Tucker as the SUV's driver and Petitioner as the backseat passenger during her in-court testimony. [12-2] at 9.

Vernon testified that when the SUV pulled up next to the Monte Carlo, Tucker asked whether Lane knew anything about his van being "shot up." *Id.* at 10. Then two guns were drawn in the SUV and began to fire into the Monte Carlo. *Id.* When he spoke to police after the incident, Vernon identified Tucker as the SUV's driver, but did not identify Petitioner. *Id.* Vernon also admitted that he was high on marijuana at the time of the shooting. *Id.*

Wooten testified that he was outside speaking to the men in the Monte Carlo when the SUV parked alongside the Monte Carlo, but that he ran when the shooting began. *Id.* at 11. Even though Wooten could not see exactly who was shooting from inside the SUV, he identified Tucker, Petitioner, and Cox as being present in the SUV. *Id.* at 10–11. During trial, Lane testified that he did not remember making the statement to ASA Stevens and Detective Crain in the hospital in which he stated that Petitioner held a gun in the backseat and that gunfire came from the back seat. *Id.* at 11.

4

Michael Bellamy, an employee of Enterprise Rent-A-Car, testified that on May 25, 2007, Strong—the missing witness—rented an SUV from him. *Id.* at 12. Bellamy testified that Strong returned to Enterprise the next day to exchange the car for another; Bellamy denied her request and ended the rental agreement. *Id.* Bellamy identified the rented SUV as the same vehicle identified by Vernon as the origin of the gunshots. *Id.*

Robert Berk, an evidence analyst, testified at trial that the same vehicle contained gunshot residue on the "rear passenger door, front passenger seat, and front passenger headrest." *Id.*

Emma William—Strong's mother—testified that Strong had not been seen since October 2007, when she left her children with Williams. *Id.*

Cook County Medical Examiner Panni Arunkumar testified that Smith died as a result of the gunshots he sustained to the head, arm, and heart. *Id.* at 13.

The defense did not call any witnesses. *Id.* When asked whether he wished to call any witnesses or testify on his own behalf, Petitioner declined. *Id.* at 13–14. Neither Cox nor Tucker testified. *Id.* at *14.*

The jury found Tucker and Petitioner guilty of first-degree murder, while Cox was found not guilty. *Id.* Tucker was sentenced to natural life in prison; Petitioner was sentenced to 28 years. *Id.*

### C. Direct Appeal

On direct appeal, Petitioner and Tucker raised two issues: (1) whether the proceedings violated their speedy trial rights; and (2) whether the State met its

5

burden of proving them guilty beyond a reasonable doubt. *Id.* The state appellate court affirmed the trial court's decision in September 2011. *Id.*

Petitioner filed a petition for leave to appeal (PLA), as to both claims from his direct appeal, but the Illinois Supreme Court denied the petition in January 2012. [12-1] at 51.

### D. Post-Conviction Proceedings

In October 2012, Petitioner filed a pro se post-conviction petition in Cook County Circuit Court. [12-2] at 14. Petitioner claimed that his trial counsel provided ineffective assistance for forcing Petitioner to proceed with a jury (rather than a bench) trial and for "failing to call alibi witnesses." *Id.* In January 2013, the Circuit Court dismissed the petition for post-conviction relief as frivolous and without merit. *Id.* at 37.

Petitioner filed an appeal of the dismissal of his petition for post-conviction relief. *Id.* at 55. The appeal raised the same two theories for ineffective assistance of counsel as enumerated in the post-conviction petition. *Id.* at 5. The appellate court affirmed the trial court's dismissal. *Id.* at 31. In September 2015, the Illinois Supreme Court denied Petitioner's post-conviction PLA, which addressed the same two claims of ineffective counsel. [13] at 4.

## III. Petitioner's Federal Habeas Corpus Claims

On March 1, 2016, Petitioner filed a Petition for Writ of Habeas Corpus. [6]. Petitioner alleged six claims, some with multiple components. This Court addresses each claim below.

## IV. Analysis

### A. Claim 1: Violation of Right to a Speedy Trial

Petitioner argues that the state trial court erred in granting an extension to the prosecution because the extension violated Illinois's Speedy Trial Act. Federal habeas review cannot, however, address this alleged error, because the Illinois Speedy Trial Act is a state statute and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Velazquez v. Sternes*, 151 F. Supp. 2d 946, 949 (N.D. Ill. 2001) ("This claim is squarely based on an alleged violation only of state law, which is not cognizable in federal habeas corpus proceedings.")

### B. Claim 2: Failure to Prove Guilt Beyond a Reasonable Doubt

Petitioner argues that the State failed to prove his guilt beyond a reasonable doubt at trial and that trial counsel was ineffective. Since the state courts adjudicated Petitioner guilty on the merits at trial and then affirmed his guilt on appeal, this Court cannot grant habeas relief unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Specifically, habeas relief is only available "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). Based upon the record here, a reasonable fact-finder could have found Petitioner

guilty beyond a reasonable doubt, and thus, Petitioner is not entitled to federal habeas relief. Claim 2 is barred from being relitigated under 28 U.S.C. § 2254(d).

### C. Claims 3a and 3b: Ineffective Assistance of Trial Counsel

To succeed on an ineffective assistance of counsel claim, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 668, 694 (1984).

Here, the state trial court adjudicated Petitioner's claim of ineffective assistance of counsel and dismissed Petitioner's pro se post-conviction petition; the appellate court later affirmed the dismissal. Given this record, this Court can only grant a writ of habeas corpus where the state court's decision remained "contrary to" or constituted "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). Thus, Petitioner must overcome a high bar to prove that the state court's application of the *Strickland* standard was unreasonable. *Allen v. Chandler*, 55 F.3d 596, 600 (7th Cir. 2009) (holding that "only a clear error in applying *Strickland* will support a writ of habeas corpus").

Based upon the record, this Court cannot find that the Illinois state courts applied *Strickland* unreasonably or made their decisions contrary to clearly established federal law in this case. Here, the post-conviction petition raised only claims that counsel allegedly forced his client to take a jury trial instead of a bench trial and failed to call witnesses. Nothing in the record suggests that there is a

8

reasonable probability that a bench trial would have yielded a different result. As for the alibi witnesses, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Here, because counsel made a deliberate decision not to call witnesses and expressed this to the court—and Petitioner acknowledged the choice in court—this Court concurs with the appellate court's affirmation of the dismissal of the post-conviction petition. There is simply no showing of a reasonable probability that the trial's result would have been different if counsel for Petitioner had called the witnesses. Claims 3a and 3b are barred from being relitigated under 28 U.S.C. § 2254(d).

### D.     Claims 3c–f: Ineffective Assistance of Trial Counsel

Claims 3c through 3f for ineffective assistance of trial counsel are procedurally defaulted, because Petitioner failed to raise these claims until the present Petition. Thus, the state courts never had a chance to address the claims, and Petitioner who has "exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). Such default can only be overcome if "the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice if the claims are ignored." *Byers*, 610 F.3d at

9

985. Neither Petitioner nor the record suggests that either of these factors is present, so Claims 3c through 3f remain procedurally defaulted.

> E. **Claim 4: Improper Use of Perjured Testimony**

Petitioner claims that the prosecution used perjured testimony and refused to correct it when two state witnesses identified Petitioner, after previously making statements about being mistaken as to the identification. Petitioner's claim about the use of perjured testimony, however, remains ineligible for federal habeas review, because it has not undergone one full round of state-court review under U.S.C. § 2254(c) ("[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."). Because Petitioner failed to raise the perjured-testimony claim prior to his habeas petition, the issue has not undergone sufficient review within the state courts, and this Court may not address it.

> F. **Claim 5: Actual Innocence**

Petitioner argues that he should be granted habeas relief because he is innocent. But the bar for granting habeas relief on a claim of actual innocence is high; "only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence" can habeas relief be granted for miscarriage of justice. *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986) (emphasis added). This narrow exception does not apply for a freestanding claim of innocence presented without any new evidence; only when a petitioner makes "a proper showing of actual

10

innocence" can the petitioner have "his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Claim 5 of actual innocence is rejected.

### G. Claim 6: Ineffective Assistance of Appellate Counsel

Claim 6 is procedurally defaulted because Petitioner did not raise the claim until this petition. Like Claims 3c through 3f and Claim 4, Claim 6 has not undergone one full round of state-court review, and therefore, this Court cannot grant federal habeas relief on that claim. *See, e.g.*, *O'Sullivan*, 526 U.S. at 845. ("the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.").

## V. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." An applicant has made a "substantial showing" when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). This Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right or that reasonable jurists would debate the resolution of his claims. Accordingly, the Court declines to issue a certificate of appealability.

## VI. Conclusion

The Petition for Writ of Habeas Corpus is denied, and the Court declines to issues a certificate of appealability. The Clerk is directed to enter a Rule 58 Judgment in favor of Respondent and against Petitioner. Civil case terminated.

Dated: December 29, 2017

Entered:

_____
John Robert Blakey
United States District Judge